THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FRANCISCO ORTEGA OTERO, Defendant and Appellant.

No. CR-68-28.      Decided June 27, 1969.

*Antonio Andino Elías* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Federico Rodríguez Gelpí, Assistant Solicitor General,* for The People.

PER CURIAM: Francisco Ortega Otero was accused of the commission of a violation of § 5-801 of the Vehicle and Traffic Law of Puerto Rico. The trial having been held on September 29, 1967, he was found guilty of the violation charged in the complaint and a fine of $150 was imposed on

him, his driver's license was suspended for the term of one year, as of the date of the judgment, and an additional suspension of his license for three months was also imposed on him because the defendant had refused to submit himself to one of the chemical analyses provided by law.

Feeling aggrieved by the judgment, the defendant appealed therefrom before this Court alleging the following errors:

"1. The judgment is not supported by the evidence.
"2. The trial court erred in ordering the additional suspension of the license because of defendant's refusal to have his blood taken."

The evidence introduced by the prosecuting attorney consisted of the testimony of the witnesses Luis Antomattei and José Martínez.

■ Luis Antomattei testified, in synthesis, that he is a policeman and that on July 11, 1967 at eight in the morning he was on duty in Highway No. 2, intersection with Wall Avenue, near the Juan Domingo Police Station. Defendant was driving an automobile in the direction of Santurce to Bayamón. When he arrived at the place where Antomattei was, the latter made a signal to him not to turn into Wall Avenue, a signal which was disregarded by defendant. Antomattei ordered him to stop making whistle and hand signals, but defendant did not pay any attention and continued on. The policeman took the license plate number in order to call Public Works. In about twenty minutes defendant returned along the alley towards Highway No. 2. Antomattei again indicated him to stop. When he began to park he again resumed speed. At that moment policeman Martínez was coming in the patrol car and Antomattei told him to follow defendant's vehicle and stop it. Martínez followed and stopped it near Marcelino Mercury. Later Antomattei went to the police station and while he was in the yard Martínez

arrived with defendant. When defendant alighted from the jeep he noticed that defendant was under the influence of intoxicating liquor since his eyes were reddish and he staggered when he walked. He proceeded to take defendant to the police station which was on the second floor. When they were going up he had to hold defendant by the arm so that he would not fall. While they were on the landing defendant struggled with the policeman and threw him two or three blows. When they were upstairs he talked with defendant and noticed that the latter smelled strongly of liquor and that he talked unevenly and with a thick voice. Later the policeman handcuffed him and took him to the Bayamón Hospital in order to have a blood analysis made. In the hospital he agreed to have his blood taken but when the doctor took the syringe he refused to have it done.

José Martínez testified that he is a policeman. On July 11, 1967 he was on duty in the Ward Juan Domingo. He intervened with defendant when policeman Antomattei was going to give defendant a ticket and the latter pulled out and left. The policeman made him signs so that he would follow defendant, which he did and stopped him near Marcelino Mercury. In defendant's car there was a lady, a gentleman, and a boy. When he stopped defendant he asked him for his license which defendant gave him. He ordered defendant to alight from the automobile and he noticed that defendant was apparently under the influence of intoxicating liquor. Defendant was staggering, had reddish eyes, smelled of liquor and what he said was hardly understood. He requested defendant to accompany him up to where Antomattei was and he refused. He called the police station and requested a policeman but at that moment Sargeant Santiago went by and helped him. He took defendant to the Police Station of Juan Domingo. Policeman Antomattei, who was waiting for him, took him out of the patrol car and when they were climbing the stairs defendant attacked him. Antomattei had

told him that he seemed to be under the influence of intoxicating liquor and that if he would consent to submit himself to one of the chemical analyses voluntarily, to which he agreed. Later they took defendant to the hospital and the doctor asked him if he consented to have his blood taken to which the former agreed, but when the doctor had the syringe to draw the blood he refused. To the magistrate's questions Antomattei testified that he warned defendant "that the license would be kept until the case was heard and if he was found guilty the license could be suspended for two years."

Pedro Ramos Cruz, Víctor Otero, and defendant himself testified for the defense.

Pedro Ramos Cruz testified that he is a merchant and owner of taxis, that defendant drives one of his automobiles. On July 11, at about six thirty in the morning he saw defendant when the latter went to give him the money for the taxi. Defendant's work shift began at ten thirty or eleven at night. Defendant's appearance was that of a man who has not slept. He did not notice that he smelled of liquor. That as a rule he takes the car away from any driver who takes liquor during his shift and does not give him any more work.

Víctor Otero testified that on July 11, while he was at the bus stop at stop sixteen and a half a friend called Aníbal went by and gave him a "lift". They went to a gas station at stop fifteen to get some gasoline for the car and there they met defendant. They talked with him and asked him where he was going, to which he answered that he was going to return the car. Aníbal told him to return the car, and that since he was going towards Bayamón he would take him. They arrived at the house of the owner of the taxi and defendant returned the taxi. Then Aníbal told defendant to drive and the latter did so. When they reached Juan Domingo he turned towards his house at the moment his wife was coming out. He stopped and asked her where was she going. She told him

she was going to Bayamón and he told her that he would take her there. They went towards Bayamón and in front of Marcelino Mercury there was a patrol car and defendant stopped and the policeman asked him for his license. At that moment another patrol car arrived and they told defendant that he was under arrest. They put him in the patrol car and the police told them that if they wanted to help him to go to the police station. He did not go to the police station because he had to go early to work. They did not make use of liquor at any time.

Defendant Francisco Ortega Otero testified that he drives a vehicle for Pedro Ramos Cruz. He began to work around ten thirty or eleven at night and he returned the car on July 11 around six thirty, a quarter to seven or seven in the morning. He saw Víctor Otero at the gasoline station of the Rochdale Taxi Cabs. He was with another man called Aníbal. From the gasoline station he went to Monserrate Street to return the car. While he was at the gasoline station Víctor Otero asked him where was he going and he told the former that he was going to Bayamón. Then Otero asked him for a "lift". Aníbal asked him to drive the car. As he was arriving at his house he saw his wife who was coming towards Bayamón. When he returned from there towards here he met the patrol car which followed him and ordered him to stop. He took out his own and the car's license and gave them to the police. The policeman told him that he was under arrest because he was drunk to which he answered that he was not drunk, that he worked at night and that he stuttered. They took him out of the car and put him in the patrol car. They took him to the Juan Domingo Police Station where he was handcuffed, he was taken into a little room and policeman Antomattei hit him twice on the back. They took him to the Bayamón Hospital to have his blood taken to which he did not consent because the nurse said it was dangerous and the doctor had also said so.

As it may be seen it is a question of a conflict in the evidence which was decided against defendant. There is nothing in the evidence to show that the trial court committed manifest error, prejudice or partiality. It has been the policy of this Court not to disturb the sound discretion of the trial judge in weighing the evidence, or to constitute itself in a trial court, in order to substitute the criterion of this Court for that of the trial court. *People* v. *Rivera Maldonado*, 90 P.R.R. 492 (1964); *People* v. *López Rodríguez*, 88 P.R.R. 459 (1963), and cases cited therein.

The second error was committed. What the evidence establishes is that defendant was required to submit to the blood analysis to which he refused. However he was not warned that he was entitled to choose between the blood, urine, or breath analyses. Before his refusal to submit to a blood analysis he was not requested to submit to any of the other two analyses. The evidence does not justify, therefore, the conclusion that appellant refused to submit himself to the chemical analyses which the law provides, which are three and from which defendant has a right to choose one.

The pronouncement about an additional suspension of the driver's license for a term of 3 months does not lie. The judgment appealed from will be modified, and as thus modified, it will be affirmed.